IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                Plaintiff,

v.                                                   Civ. No. 04-556 JH/RHS

FERNANDA LOVATO, DAIRYLAND
INSURANCE COMPANY, and
CALIFORNIA CASUALTY INSURANCE
COMPANY,

                Defendants.

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant *Fernanda Lovato's Motion to Certify Question to the New Mexico Supreme Court* [Doc. No. 26] and *Plaintiff's Motion for Summary Judgment* [Doc. No 17]. The primary issues before the Court are whether Plaintiff is entitled to a contractual or a statutory offset, and whether existing New Mexico law adequately answers that question. After careful consideration of the facts, the law, and the briefs submitted by the parties, the Court concludes that both motions should be denied.

### STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

## FACTS

The facts of this case are largely undisputed.

On May 16, 2003, Defendant Fernanda Lovato ("Lovato") was in a car accident. At the time, Lovato was driving a truck owned by Steve Fernandez ("Fernandez") and insured by Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm"). The other vehicle involved in the accident was driven by Kyla Ngirbedul and owned by Kathleen Ngirbedul ("Ngirbedul"). State Farm also insured Ngirbedul's vehicle with a policy that carries a limit on liability of $100,000. Lovato's liability claim against Ngirbedul was settled for the applicable $100,000 policy limit, paid by State Farm on behalf of Ngirbedul.

Fernandez' insurance policy with State Farm, under which Lovato is a Class II insured[1], carries uninsured/underinsured motorist ("UIM") coverage of $100,000. In addition, Lovato has two uninsured motorist policies with Defendant Dairyland Insurance Company ("Dairyland") in the amount of $100,000 each with regard to which she is a Class I insured. Lovato also has three

---

[1] "Class I insureds are the named insured, the spouse, and those relatives that reside in the household while Class II insureds are insured by virtue of their passenger status in an insured vehicle." *Tarango v. Farmers Ins. Co. of Arizona*, 115 N.M. 225, 226 (1993).

uninsured motorist policies issued by Defendant California Casualty Insurance Company ("California Casualty") of $30,000 each, totaling $90,000. There is a factual dispute as to whether or not Lovato is a Class I insured under the three California Casualty policies.

The parties have presented no evidence regarding the total amount of Lovato's damages arising from the accident in question. However, for the purposes of this motion the Court will assume that those damages exceed $100,000.

## DISCUSSION

The threshold issue before the Court is to determine the type of relief that Plaintiff State Farm is seeking in this litigation. In its Complaint, State Farm asks this Court to declare that "For the UIM coverage under the Fernandez policy, State Farm is entitled to a contractual offset for the $100,000 settlement between Ms. Lovato and Kyna Ngirbedul under Kyna Ngirbedul's liability insurance with State Farm." Complaint at p. 3 (emphasis added). In its Complaint State Farm does not specifically request a statutory offset. Further, in the "Summary" on page two of its brief, State Farm frames the issue as whether it is entitled to contractual offset against the UIM coverage provided by the Fernadez State Farm policy. However, the parties have argued the issue of statutory offset in their briefs regarding the motion for summary judgment, and none of the defendants have argued that State Farm has failed to properly plead it. Accordingly, the Court will address State Farm's entitlement to both contractual and statutory offset.

State Farm argues that it is entitled to offset the $100,000 liability payment it made to Lovato under the Ngirbedul policy against the $100,000 UIM coverage contained in the Fernandez policy. In support of this position, State Farm relies upon *Mountain States Mut. Cas. Co. v. Martinez*, 115 N.M. 141 (1993) and *Samora v. State Farm Mut. Aut. Ins. Co.*, 119 N.M. 467 (1995).

In *Martinez*, the issue was whether a Class II insured is entitled to collect under both the liability and UIM provisions of the same insurance policy without an offset. Under the facts of that case, Martinez was riding in a car driven by Roybal and was seriously injured during an accident. 115 N.M. at 141. Roybal was insured by Mountain States Mutual Casualty Company, and her policy provided for $60,000 of liability coverage and $60,000 of UIM coverage. *Id*. Mountain States paid Martinez the full $60,000 under the liability provision. *Id*. Because Martinez' damages exceeded that amount, she made a claim under the UIM provision of the Mountain States policy, claiming that Roybal was an underinsured driver. The policy contained an express provision for offset of all sums paid under the policy's liability provision.

The New Mexico Supreme Court held that this provision was not against public policy and enforced the contractual offset, denying Martinez' claim to the UIM proceeds. *Id*. at 142. The court reasoned that New Mexico's UIM statute was designed primarily to protect Class I insureds who purchased insurance for themselves and their families, and therefore would not interfere with contractual limitations denying UIM proceeds to Class II insureds. *Id*. The Supreme Court also observed that to permit a Class II insured to recover both liability benefits and UIM benefits under a negligent host driver's policy "would transform underinsured motorist insurance into liability insurance and thus create a duplication of liability benefits." *Id*. at 143. The court contrasted to this situation to one in which a Class I insured was permitted to recover under both the liability and UIM portions of her policy, where she had paid for those benefits and "coverage should follow her into any underinsured vehicle, even her own family's vehicle." *Id*. (citing *Padilla v. Dairyland Ins. Co*., 109 N.M. 555 (1990)).

The facts of *Martinez* are distinguishable from those presented here in one extremely

4

important respect—in this case, Lovato seeks to recover under the liability provision of one policy and the UIM coverage of a second, entirely separate policy. By contrast, the Class II insured in *Martinez* tried to recover under two separate coverages within the same policy. Therefore, the issue raised by the New Mexico Supreme Court regarding the transformation of UIM coverage into *de facto* liability coverage is not present here. Further, the court's opinion in *Martinez* must be viewed in light of its opinion two months later in *Tarango v. Farmers Ins. Co. of Arizona*, 115 N.M. 225 (1993).

     *Tarango* addresses facts very similar to the facts of this case. Tarango was a passenger in a car driven and owned by Alarcon when he was injured by a car driven by Martin. Accordingly, Tarango was a Class II insured with respect to Alarcon's insurer, Allstate. *Id.* at 226. Martin's insurer paid Tarango $25,000, the full limits of its liability policy. Tarango then made claims against Alarcon's UIM policy issued by Allstate, as well as against her own UIM coverage on two policies from Farmers Insurance with respect to which she was a Class I insured. *Id.* The limits on UIM coverage on each of these three policies was $25,000. The Court held that as the Class II insurer of the vehicle in which the injured party was a passenger, Allstate was required to pay UIM benefits up to its policy limits before Tarango's own Class I insurer, Farmer's, was required to pay UIM benefits. In reaching this conclusion, the New Mexico Supreme Court quoted and relied upon its reasoning in *Branchal v. Safeco Ins. Co.*, 106 N.M. 70, 70 (1987) and considerations of public policy contained therein: "[I]t is the better and more reasonable rule to require the insurer of the vehicle in which the injured party was riding as a passenger, rather than as an owner or driver, to first pay uninsured motorist benefits before the injured party's insurer may be required to pay under its uninsured motorist coverage." Thus, the reasoning of *Tarango* supports Defendants' position in this case.

However, State Farm argues that its contractual offset should be permitted under *Samora v. State Farm Mut. Auto. Ins. Co.*, 119 N.M. 467 (1995). Like Martinez and Tarango before him, Samora was injured when he was a passenger in a vehicle driven by another. It was a single-car accident, and the driver-tortfeasor was insured by American States Insurance Company. *Id.* at 468. The American States policy carried liability coverage of $50,000 and UIM coverage of $50,000. *Id.* at 469. In addition, the American States policy included an offset provision that required any amount of UIM coverage to be reduced by any amount paid for liability. Id. Perhaps in light of *Martinez*, the parties agreed that the contractual offset was valid and that Samora could not recover under both the liability and UIM portions of the driver's American States policy. *Id.*

The real issue in *Samora* was the rights and responsibilities of his Class I insurer, State Farm, whose policy contained $25,000 in UIM coverage—that is to say, whether State Farm was entitled to both contractual and statutory offsets of the liability payment. The court framed the issue as "whether an injured passenger's 'Class I' coverage is reduced by a liability payment made by a 'Class II' insurer when the same liability payment also reduced the 'Class II' insurer's coverage for the same injured passenger." *Id.* at 468.

The New Mexico Supreme Court found that for the purposes of determining the applicability of contractual offset, Samora had only $25,000 total in UIM coverage, rather than the stacked amount of $75,000 advocated by Samora. *Id.* at 469. The court reasoned that the American States UIM coverage had already been contractually offset by its $50,000 liability payment, leaving nothing to stack with State Farm's $25,000. *Id.* at 470. The court then concluded that Samora was not entitled to any portion of that $25,000 because he had been paid the liability limit of $50,000. *Id.*

In this Court's view, *Samora* merely continues the line of cases started by *Martinez* and

6

*Tarango*, but does little to help State Farm's position in this case regarding contractual (or statutory) offset.  *Samora* confirms that a Class II insured is not entitled to recover under both the liability and UIM portions of the same policy, not a situation now before the Court.  Further, *Samora* does not change the rationale of *Tarango*—which provides that under the facts presented here the insured should look first to the Class II UIM coverage of the vehicle involved in the accident—in any respect.  Applying the reasoning of *Tarango*, the Court concludes that under New Mexico law, State Farm is not entitled to a contractual offset.

The next issue before the Court is the applicability of a statutory offset.  The New Mexico Legislature has defined the term "underinsured motorist" to mean "an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage."  NMSA 1978, § 66-5-301(B).  As State Farm correctly points out, the New Mexico Supreme Court has interpreted this statutory provision to mean that "the state of being underinsured exists when the *aggregate* of the insured's uninsured motorist coverage reduced by the tortfeasor's liability coverage is greater than zero."  *Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 223 (1985) (emphasis added).

Overlooking the term "aggregate," State Farm argues that its $100,000 liability payment under the Ngirbedul policy should be offset against the $100,000 UIM coverage contained in the Fernandez policy, leaving State Farm to pay nothing.  This reasoning ignores the rationale of *Schmick*, where the court stated that:

> [A]n insured is entitled to underinsurance benefits to the extent that

>his uninsured/underinsured coverage exceeds the tortfeasor's liability insurance. In other words, the intent of the Legislature was to put an injured insured in the same position he would have been in had the tortfeasor had liability coverage in an amount equal to the uninsured/underinsured motorist protection purchased for the insured's benefit.... 'Coverage' [] includes one or more policies depending on the number purchased for the insured's benefit.

103 N.M. at 219. Under this reasoning, the court permitted Schmick to stack her two UIM policies of $15,000 apiece for a total of $30,000. This amount was offset by the tortfeasor's liability payment of $25,000, leaving the tortfeasor underinsured to the amount of $5,000 and entitling Schmick to UIM benefits of that amount. *Id.* at 222-24.

Applying the reasoning set forth in *Schmick* to this case, the aggregate amount of UIM benefits available to Lovato is $390,000: $100,000 from State Farm, $200,000 from Dairyland, and $90,000 from California Casualty. *See also Morro v. Farmers Ins. Group*, 106 N.M. 669, 672 (1988) (permitting insured to stack her Class I and Class II UIM coverages). After the $100,000 liability payment is offset from this amount, Ngirbedul is underinsured by a maximum amount of $290,000.[2] State Farm is not entitled to a statutory offset of the entire $100,000 from its own UIM policy as it requests in its motion for summary judgment.

Having found that the issues raised in State Farm's motion are adequately addressed by existing New Mexico statutes and precedent, it is unnecessary to certify the matter to the New Mexico Supreme Court.

**IT IS THEREFORE ORDERED** that Defendant *Fernanda Lovato's Motion to Certify Question to the New Mexico Supreme Court* [Doc. No. 26] is **DENIED** and *Plaintiff's Motion for*

---

[2]The precise degree to which the tortfeasor is underinsured depends on the amount of Lovato's damages, an issue not presently before the Court.

*Summary Judgment* [Doc. No 17] is **DENIED**.

_____
UNITED STATES DISTRICT JUDGE